## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | |
|---|---|
| JOHN DOE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   No. 4:20-CV-331 PLC |
| | ) |
| ARCHDIOCESE OF ST. LOUIS and | ) |
| FR. ALEXANDER ANDERSON, | ) |
| | ) |
| Defendants. | ) |

### MEMORANDUM AND ORDER

This matter is before the Court on Defendants Archdiocese of St. Louis's and Father Alexander Anderson's motions for summary judgment. [ECF Nos. 147 & 159] Also pending before the Court are Defendant Archdiocese's motion to exclude expert witness [ECF No. 145] and Plaintiff John Doe's motion to compel production of documents [ECF No. 170]. For the reasons set forth below, the Court grants Defendants summary judgment on Plaintiff's federal claims, dismisses without prejudice Plaintiff's state-law claims, and denies as moot the motions to exclude expert witness and to compel production of documents.

### I.   Background

This action arises from Plaintiff's claims that Defendant Anderson sexually abused him "in the late 1980s" when Plaintiff was a student residing at St. Joseph's Home for Boys, which was "under the supervision and control and/or owned by the Archdiocese[.]" [ECF No. 72 at ¶ 13] Plaintiff alleges that he reported the abuse to the Archdiocese, but "no action was taken." [Id. at ¶ 25] Plaintiff maintains that "[a]fter his reports came to naught, [he] repressed all memor[ies] of the abuse and did not recall them again until his [criminal] sentencing in approximately 2016." [Id.]

1

Plaintiff filed his original complaint *pro se* in February 2020, alleging that Defendants, as well as other individuals and entities no longer in the case, were liable under 42 U.S.C. § 1983, 20 U.S.C. § 1681(a) ("Title IX"), and Missouri state law. [ECF No. 1] After several defendants filed motions to dismiss the original complaint under Fed. R. Civ. P. 12(b)(1) and 12(b)(6) and motions to quash under Fed. R. Civ. P. 12(b)(5), Plaintiff's counsel entered the case and filed a motion to amend the complaint, along with a proposed first amended complaint. [ECF Nos. 44, 53, 53-1] By order dated December 8, 2020, the Court granted Plaintiff's motion for leave to file an amended complaint over Defendant Archdiocese's objections, but required certain clarifications of Plaintiff's claims. [ECF No. 58] Based on Plaintiff's stated intent to file an amended complaint, the Court denied without prejudice as moot the motions to dismiss and motions to quash. [Id.]

Later that month, the Archdiocese again moved to dismiss Plaintiff's claims, directing its motion to Plaintiff's proposed first amended complaint. [ECF No. 59] Because the Archdiocese's motion sought dismissal of claims that were not before the court, the Court denied the motion without prejudice and directed Plaintiff to file a first amended complaint in compliance with the December 2020 order. [ECF No. 71]

Plaintiff filed a first amended complaint[1] on February 26, 2021, invoking the Court's federal subject matter jurisdiction under 28 U.S.C. § 1331, based upon claims for violations of Section 1983 and Title IX. The first amended complaint alleges: battery against Defendants (Count 1); intentional failure to supervise clergy against Defendant Archdiocese (Count 2); "breach of special relationship/duty," against Defendants (Count 3); fraud and conspiracy to commit fraud against Defendants (Count 4); constructive fraud against Defendants (Count 5); intentional infliction of emotional distress against Defendant Archdiocese (Count 6); intentional

---

[1] Plaintiff incorrectly titled his first amended complaint "2nd Amended Complaint." [ECF No. 72]

infliction of emotional distress against Defendant Anderson (Count 7); negligence against Defendants (Count 8); "violation of rights" under Section 1983 against Defendants (Count 9); and "violation of rights" under Title IX against Defendant Archdiocese (Count 10).

In December 2021, after a lengthy discovery period prolonged by Plaintiff's incarcerated status and prison covid-19 protocols, the Court entered, at the parties' joint request, a Second Amended Case Management Order. [ECF Nos. 122, 124] In that Order, the Court set deadlines for completion of discovery and dispositive motions and advised that "no further extensions of discovery deadlines will be granted." [ECF No. 124] Defendants timely moved for summary judgment.[2] [ECF Nos. 147, 159]

## II.   Legal Standard

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it might affect the outcome of the suit, and a dispute is genuine if the evidence is such that it could lead a reasonable jury to return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A court considering a motion for summary judgment must view the facts in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences to be drawn from those facts. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

---

[2] Approximately one week later (and two weeks after the close of discovery), Plaintiff moved to compel Defendant Archdiocese to produce documents. [ECF No. 170]. At a status conference on the motion to compel in May 2022, Plaintiff's counsel orally moved to amend the complaint to exclude the "negligence claims" in light of the Missouri Supreme Court's decision in Doe 122 v. Marianist Province of the United States, 620 S.W.3d 73 (Mo. banc 2021). [ECF No. 224] The Court ordered Plaintiff's counsel to file a written motion dismissing those claims. [Id.] As of this this date, Plaintiff has not filed such a motion.

The movant "bears the initial responsibility of informing the district court of the basis for its motion" and must identify "those portions of [the record]...which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the movant meets its burden, the non-movant must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e); Anderson, 477 U.S. at 256. "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." Anderson, 477 U.S. at 252.

### III.  Discussion

In their motions for summary judgment, Defendants maintain that Plaintiff cannot establish the essential elements of his claims under Section 1983 and Title IX.[3] In regard to Plaintiff's state-law claims, Defendants assert that: (1) Missouri's two-year statute of limitations bars Plaintiff's battery claim;[4] (2) Plaintiff failed to state a claim and/or present evidence establishing the essential elements of intentional failure to supervise clergy, fraud, conspiracy to commit fraud, and intentional infliction of emotional distress; and (3) Plaintiff's claims for "breach of special relationship/fiduciary duty," constructive fraud, and negligence are not cognizable under Missouri law.[5] [ECF Nos. 148, 160]  In response, Plaintiff argues that: (1) he established his Section 1983

---

[3] The Court addresses Defendant's arguments out of order for ease of analysis.

[4] Defendant Archdiocese also argues that, even if Plaintiff's battery claim were not barred by the statute of limitations, Defendant Archdiocese is entitled to summary judgment because a claim for battery is not cognizable against a non-perpetrator corporate entity.  Citing State ex rel. Heart of Am. Council vs. McKenzie, 484 S.W.3d 320, 327 (Mo. banc 2016) ("[a] nonperpetrator defendant could not cause injury or illness by 'childhood sexual abuse'"); Walker v. Barrett, 650 F.3d 1198, 1209-10 (8th Cir. 2011) (same).

[5] At the status conference in May 2022, Plaintiff's counsel acknowledged the Missouri Supreme Court's holding that imposing negligence liability on a religious organization for the acts of its clergy "require[s] an impermissible examination of ecclesiastical decisions" and therefore violates the First Amendment to the United States Constitution.  Doe 122, 620 S.W.3d at 80-81 (citing Gibson v. Brewer, 952 S.W.2d 239, 246-47 (Mo. banc 1997)).  Missouri courts have also held that

4

claim; (2) his battery claim "should be read as a claim for childhood sexual abuse" such that Missouri's ten-year statute of limitations applies; and (3) he offered evidence of the essential elements of each state-law claim. [ECF Nos. 219, 220]

### A. Section 1983 claim (Count 9)

Defendants assert that they are entitled to summary judgment on Plaintiff's Section 1983 claim because they were not acting "under color of law" when they allegedly violated Plaintiff's constitutional rights. Plaintiff counters that summary judgment is not proper because he presented evidence that St. Joseph's received state funding and was therefore a state actor subject to liability under Section 1983.

To establish a violation of Section 1983, a plaintiff must demonstrate: (1) the defendant acted under color of state law; and (2) the alleged wrongful conduct deprived the plaintiff of a constitutionally protected federal right. McKay v. City of St. Louis, 960 F.3d 1094, 1099 (8th Cir. 2020). "[T]he under-color-of-state-law element of § 1983 excludes from its reach 'merely private conduct, no matter how discriminatory or wrongful.'" Americans United for Separation of Church & State v. Prison Fellowship Ministries, Inc., 509 F.3d 406, 421 (8th Cir. 2007) (quoting Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 50 (1999)). However, "[i]n certain circumstances the government may become so entangled in private conduct that 'the deed of an ostensibly private organization or individual is to be treated ... as if a State had caused it to be performed.'" Id. (quoting Wickersham v. City of Columbia, 481 F.3d 591, 597 (8th Cir. 2007)).

---

clergy and religious organizations cannot be held civilly liable in actions for breach of fiduciary duty with respect to sexual misconduct of clergy because such actions "inevitably entangle civil courts in religious matters." H.R.B. v. J.L.G., 913 S.W.2d 92, 98 (Mo. App. 1995). Although Plaintiff's counsel communicated to the Court her intention to voluntarily dismiss Plaintiff's state-law claims that implicate the First Amendment and are therefore non-cognizable, she has not done so. As such, those claims remain before the Court and subject to this memorandum and order.

5

"The issue is whether the 'alleged infringement of federal rights [is] fairly attributable to the State.'" Id. (quoting Rendell-Baker v. Kohn, 457 U.S. 830, 840-41 (1982)). "[S]tate action may be found … only if … there is such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself." Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n, 531 U.S. 288, 295 (2001) (internal quotation marks omitted). When determining whether to attribute a private actor's conduct to the state for purposes of Section 1983, courts consider: "the extent of state regulation, receipt of public funds, the type of function involved, and the presence of a symbiotic relationship." Sinn v. The Daily Nebraskan, 829 F.2d 662, 665 (8th Cir. 1987) (citing Rendell-Baker, 457 U.S. 840-42).

Citing the affidavit of Bishop Mark Rivituso, the Archdiocese asserts that it was not a state actor because "[it] never contracted with the state to provide services through St. Joseph's, nor did it receive any state or federal funding related to St. Joseph's."[6] [ECF No. 148 at 20]  In response, Plaintiff claims that he "established this statement is incorrect" because he presented evidence that "[c]hildren were taken to St. Joseph's Home for Boys by DFS," and "DFS paid for their admission there."[7]  [ECF No. 220 at 29]  Significantly, Plaintiff cites no authority supporting his suggestion that receipt of public funding alone converts a private party's actions into state action.

---

[6] In the affidavit, Bishop Rivituso stated, in relevant part: "St. Joseph's Home for Boys has been closed since 2001, and upon information and belief, never received any federal funding during the relevant time period"; (2) "The Archdiocese of St. Louis has never received any state or federal funding related to St. Joseph's Home for Boys"; and "The Archdiocese of St. Louis never contracted with the State of Missouri to provide services through St. Joseph's Home for Boys." [ECF No. 149-8 at ¶¶ 3-5]

[7] Plaintiff appears to refer to this entity alternately as "DFS" and "Missouri Department of Family Services." [See ECF No. 220 at 29] However, Plaintiff provides no evidence relating to its function, funding, relationship to the state of Missouri, or relationship to either St. Joseph's or Defendant Archdiocese. In fact, Plaintiff does not once cite to the record in support of his response in opposition to Defendant Archdiocese's motion for summary judgment on Plaintiff's Section 1983 claim. To the extent he "incorporates by reference" his response to Defendant Anderson's motion for summary judgment on Plaintiff's Section 1983 claim, that response cites the deposition testimony of C.H. a witness who alleges that Defendant Anderson sexually abused him when he

The sole basis for Plaintiff's claim that Defendant Archdiocese was a state actor for purposes of Section 1983 is his assertion that St. Joseph's, which was owned and operated by the Archdiocese, received state funding because DFS placed children in St. Joseph's care. Even if the Court accepts Plaintiff's assertion regarding DFS as true, the United States Supreme Court has held that receipt of public funding alone does not render a private school a state actor for purposes of Section 1983. Rendell-Baker v. Kohn, 457 U.S. 830, 840-41 (1982) (school for students who had difficulty completing public high school was not a state actor even though "virtually all of the school's income was derived from state funds"). See also Nichols v. Metro. Ctr. for Independent Living, Inc., 50 F.3d 514, 518 (8th Cir. 1995) (center for independent living for persons with disabilities was not a state actor even though it "depends upon government for nearly all of its funding," "performs uniquely public functions," and "is subject to extensive governmental regulations and licensing"). In the absence of any other argument or evidence demonstrating a close nexus between the Archdiocese and the state, Plaintiff's Section 1983 claim cannot withstand summary judgment. The Court grants Defendant Archdiocese summary judgment on Plaintiff's Count 9.

Like Defendant Archdiocese, Defendant Anderson moves for summary judgment on the ground that Plaintiff fails to establish that Defendant Anderson was acting under color of state law when he allegedly abused Plaintiff.[8]  Defendant Anderson states that he "is a private individual

---

was a resident of St. Joseph's in the late 1990s. [See ECF No. 219 at 21-22 (citing ECF No. 211-2)] In his deposition, C.H. testified that "DFS" removed him from his mother's custody and placed him at various children's homes, including St. Joseph's. Notably, Plaintiff does not explain what he means by – and provides no evidence supporting – his assertion that "DFS paid for [children's] admission there."

[8] Additionally, Defendant Anderson asserts that Plaintiff failed to state a claim under Section 1983 because he does not identify "a single right arising 'under the Constitution or laws of the United State' which he alleged Father Anderson infringed upon." [ECF No. 160 at 13] Plaintiff does not dispute that the first amended complaint does not identify a constitutional right but asserts that "[s]exual abuse and harassment are both recognized violations of the Fourteenth Amendment."

7

employed by *a private religious entity*, rather than a state actor." [ECF No. 160 at 13 (emphasis in original)]  Plaintiff counters: "Because [St. Joseph's] received state funding, it is a 'state actor' under 42 U.S.C. [§] 1983" and Defendant Anderson, "as a managerial agent of the school[,] is also a state actor." [ECF No. 219 at 22]

As previously discussed, Plaintiff failed to demonstrate that the Archdiocese, as the owner and operator of St. Joseph's, was a "state actor" for purposes of Section 1983.  Nothing in Plaintiff's first amended complaint or summary judgment materials demonstrates a sufficiently close nexus between Defendant Archdiocese and the state such that the Archdiocese's conduct "could be fairly attributable to the state."  See Rendell-Baker, 457 U.S. at 838.  Given Plaintiff's failure to demonstrate that the Archdiocese was a state actor, Plaintiff cannot establish that Defendant Anderson was a state actor.  The Court grants Defendant Anderson summary judgment on Plaintiff's Count 9.

### B. Title IX claim (Count 10)

Defendant Archdiocese asserts that it is entitled to summary judgment on Plaintiff's Title IX claim because St. Joseph's did not receive federal funding.  Plaintiff does not respond to Defendant Archdiocese's argument.

Section 901(a) of Title IX of the Education Amendments Act of 1972 provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance."  20 U.S.C. § 1681(a).  "In short, the statute bars federally funded educational institutions from engaging in sex-based discrimination."  Portz v. St. Cloud State

---

[ECF No. 219 at 22 (citing Kinman v. Omaha Pub. Sch. Dist., 171 F.3d 607, 611 (8th Cir. 1999)]  Because Plaintiff fails to establish that Defendants were acting under color of law during the relevant time period, the Court declines to address this argument.

Univ., 16 F.4th 577, 580 (8th Cir. 2021) (quotation omitted). "Entities that receive federal assistance, whether directly or through an intermediary, are recipients within the meaning of Title IX; entities that only benefit economically from federal assistance are not." Nat'l Collegiate Athletic Ass'n v. Smith, 525 U.S. 459, 468 (1999).

If, as Defendant Archdiocese contends, St. Joseph's did not receive federal financial assistance, the Archdiocese is not subject to liability under Title IX. Plaintiff presents no evidence that St. Joseph's received federal funds. In fact, in his response in opposition to Defendant Anderson's motion for summary judgment, Plaintiff acknowledges that he "has no knowledge of whether the School received Federal funds[.]" [ECF No. 219 at 21] In the absence of any evidence upon which a jury could reasonably find that St. Joseph's received federal financial assistance subjecting it and, by extension, the Archdiocese, to Title IX liability, the Court grants Defendant Archdiocese summary judgment on Plaintiff's Count 10. See, e.g., Buckley v. Archdiocese of Rockville Centre, 992 F.Supp. 586, 590 (E.D. N.Y. 1998) (dismissing the plaintiff's Title IX claims because the plaintiff "has not demonstrated that St. Anthony's, the Brothers or the Diocese are the recipients of federal resources.").

### C. State-Law Claims (Counts 1 through 8)

In Counts 1 through 8, Plaintiff asserts state-law claims against Defendants. These claims are before the Court based on supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a). Where, as here, the Court has dismissed the federal claims over which it had original jurisdiction, this Court may, in its discretion, decline to exercise supplemental jurisdiction. Id. § 1367(c)(3); Glorvigen v. Cirrus Design Corp., 581 F.3d 737, 743 (8th Cir. 2008). "In fact, when a district court has dismissed every federal claim … 'judicial economy, convenience, fairness, and comity' will usually 'point toward declining to exercise jurisdiction over the remaining state-law claims.'"

9

McManemy v. Tierney, 970 F.3d 1034, 1040–41 (8th Cir. 2020) (quoting Wilson v. Miller, 821 F.3d 963, 970–71 (8th Cir. 2016)).  "Federal district courts should exercise judicial restraint and avoid state law issues wherever possible because state law claims are more properly heard by state courts." Quinn v. BJC Health Sys., 364 F.Supp.2d 1046, 1056 (E.D. Mo. 2005) (citations omitted).

Here, the factors weigh in favor of declining to exercise supplemental jurisdiction.  Judicial economy and convenience do not heavily favor retaining jurisdiction because discovery produced in this case may be used in a case subsequently filed in state court.  See, e.g., A.P. v. William Jewell College, No. 19-CV-351 SRB, 2021 WL 5514013, at *11 (W.D. Mo. Feb. 4, 2021).  Moreover, at the parties' joint request, this case is not scheduled for trial until January 2023.  Finally, the Court finds that Plaintiff's remaining claims involve questions of state law that would be better determined by the Missouri state courts.  See, e.g., Kern v. St. Charles Cnty., Missouri, No. 4:20-CV-884 SPM, 2022 WL 1262507, at *14-15 (E.D. Mo. Apr. 28, 2022).  Accordingly, the Court dismisses Plaintiff's state law claims (Counts 1 through 8) without prejudice.  To the extent that the motions for summary judgment are directed toward the state law claims, they are denied as moot.

### IV.   Conclusion

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Defendants' motions for summary judgment [ECF Nos. 147 and 159] are **GRANTED** as to Plaintiff's claims under 42 U.S.C. § 1983 and Title IX (Counts 9 and 10) and **DENIED** as moot as to Plaintiff's claims under state law (Counts 1 through 8).

**IT IS FURTHER ORDERED** that Plaintiff's claims under 42 U.S.C. § 1983 and Title IX (Counts 9 and 10) are **DISMISSED** with prejudice.

**IT IS FURTHER ORDERED** that Plaintiff's claims under state law (Counts 1 through 8) are **DISMISSED** without prejudice.

**IT IS FURTHER ORDERED** that Plaintiff's motion to compel [ECF No. 170] and Defendant's motion to exclude Plaintiff's expert [ECF No. 145] are **DENIED** as moot.

A separate judgment in accordance with this Memorandum and Order is entered this same date.

_____
PATRICIA L. COHEN
UNITED STATES MAGISTRATE JUDGE

Dated this 29th day of July, 2022